IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SCOTT P. SINKHORN, ) | |
| ) | Case No. 08 C 1431 |
| Plaintiff, ) | |
| ) | Judge Virginia M. Kendall |
| v. ) | |
| ) | |
| RAY LAHOOD, SECRETARY OF THE ) | |
| DEPARTMENT OF TRANSPORTATION, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Scott P. Sinkhorn ("Sinkhorn"), an employee of the Federal Aviation Administration ("FAA"), filed this employment discrimination suit against Defendant Ray LaHood ("LaHood"),[1] Secretary of the Department of Transportation. Sinkhorn's Second Amended Complaint alleged gender discrimination (Count I), race discrimination (Count II), retaliation for engaging in protected activity (Count III), and creation of a hostile work environment (Count IV), all in violation of Title VII, 42 U.S.C. § 2000e *et seq* . Sinkhorn voluntarily dismissed his race discrimination claim, and LaHood now moves for summary judgment[2] on the three remaining Counts of the Second Amended Complaint. For the reasons stated herein, LaHood's Motion for Summary Judgment is granted.

---

[1] On January 23, Ray LaHood followed the original named Defendant, Mary Peters, as Secretary of the Department of Transportation. He is automatically substituted as a party pursuant to Federal Rule of Civil Procedure 25(d).

[2] Sinkhorn's responsive pleadings to LaHood's Motion for Summary Judgment are titled "Plaintiff's Response to Defendant's Motion to Dismiss or Alternatively for Summary Judgment." LaHood fully answered the Second Amended Complaint and has never moved to dismiss this action, and does not do so now. The present Motion is a fully briefed Motion for Summary Judgment with accompanying Rule 56.1 statements from both parties, and the Court addresses it as such.

## STATEMENT OF UNDISPUTED FACTS

Scott Sinkhorn began working as a air traffic control specialist for the FAA in 1982. (Pl. 56.1 Resp. ¶ 1).[3] Sinkhorn is still employed by the FAA and works as an air traffic controller in Aurora, Illinois. (*Id.*) Sinkhorn's ultimate supervisor is the air traffic manager, a position that various different employees have held over the course of Sinkhorn's employment. (Pl. 56.1 Resp. ¶ 2). At the times relevant to this suit, Bill Cound ("Cound") was employed as the air traffic manager and Gordon Woodahl ("Woodahl") was an assistant air traffic manager. (*Id.*)

Curtis Ward ("Ward"), a co-worker of Sinkhorn's, was originally an air traffic controller and was then promoted to a supervisory position. (Pl. 56.1 Resp. ¶ 4). Sinkhorn and Ward did not share the same work schedule and typically worked together fewer than three times a week. (*Id.*) Sinkhorn had concerns about Ward's behavior, including his use of "ghetto slang" and profanity, and about his habit of telling inappropriate stories. (*Id.*) When around females, Ward spoke more "carefully," though he used the same language and told the same stories to men and women. (*Id.*) Mike Kerwin ("Kerwin") was another of Sinkhorn's coworkers, with whom Sinkhorn worked four to five times a week. (Pl. 56.1 Resp. ¶ 5). Sinkhorn complained that Kerwin used "disgusting" language and was offensively flatulent but tended not to pass gas as frequently around women. (*Id.*)

Starting in 1998, Sinkhorn began writing letters and verbally complaining about the conduct of his coworkers, eventually complaining to at least seventeen FAA employees. (Pl. 56.1 Resp. ¶ 6). Sinkhorn believed that the complaints of female employees were handled more rapidly than his, naming Chrystalina Morris ("Morris") as one female employee whose complaints were handled in

---

[3] Throughout this Opinion, the Court references the Parties' Local Rule 56.1 Statements of Undisputed Material Facts as follows: citations to Sinkhorn's Response to LaHood's Statement of Facts have been abbreviated to "Pl. 56.1 Resp. ¶ __." ; citations to LaHood's Reply to Sinkhorn's Statement of Additional Material Facts have been abbreviated to "Def. 56.1 Reply ¶ __."

2

a more timely manner. (Pl. 56.1 Resp. ¶ 6; Def. 56.1 Reply ¶ 3.) Sinkhorn reported that after she made an unspecified complaint, Morris was moved to another work area. (Pl. 56.1 Resp. ¶ 6.)

On September 1, 2006, Sinkhorn wrote to the FAA Office of Civil Rights about his complaints. (Pl. 56.1 Resp. ¶ 13). Sinkhorn then wrote to his congressional representative, Congresswoman Judy Biggert. (*Id.*) Sinkhorn first spoke to an EEO counselor about the issues he was facing at his place of employment on January 9, 2007. (Pl. 56.1 Reply ¶ 10). He filed a formal EEOC complaint on February 8, 2007. (*Id.*)

In March of 2007, Sinkhorn was diagnosed with Non-Hodgkins Lymphoma. (Pl. 56.1 Resp. ¶ 7). From mid-March to early August of 2007 Sinkhorn was medically disqualified from his duties as an air traffic controller. (*Id.*) While on medical disqualification from their own positions, FAA employees can fulfill other duties if such additional duties are available, and Sinkhorn did so for all but twenty-nine of approximately 100 days of medical disqualification. (*Id.*) Sinkhorn asked to use sick leave he had not yet earned for the remainder of his disqualification, requesting 240 hours and eventually using 220 hours. (Pl. 56.1 Resp. ¶ 8).

Many, if not most, of Sinkhorn's Additional Facts rely solely upon his self-serving "Declaration," a signed affidavit, for evidentiary support. This Declaration fails to provide an adequate foundation for his assertions, and contains hearsay and other inadmissible evidence throughout the document. The facts supported solely by Sinkhorn's Declaration are therefore not properly established, and the Court will not consider them in deciding LaHood's Motion for Summary Judgment. *See, e.g., Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 504 (7th Cir. 2004) ("[S]elf-serving statements contained in an affidavit will not defeat a motion for summary judgment when those statements are without factual support in the record.")

**STANDARD OF REVIEW**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ.P 56(c). When determining if a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the Court will "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000). Where a proposed statement of fact is supported by the record and not adequately rebutted, the court will accept that statement as true for purposes of summary judgment. An adequate rebuttal requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998)("'Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.'").

## DISCUSSION

### I. Reverse Gender Discrimination

A Title VII plaintiff may establish gender discrimination using either the direct or the indirect method of proof, *see Mateu-Anderegg v. School District of Whitefish Bay*, 304 F.3d 618, 623 (7th Cir. 2002), and Sinkhorn here proceeds under the indirect method. Thus, to establish a *prima facie* case under the framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), he must show that he is a member of a protected class, that he was meeting his employer's legitimate

4

expectations, that he suffered an adverse employment action, and that similarly situated individuals outside of the protected class were treated more favorably.

### *1. Member of a Protected Class*

Because Sinkhorn here alleges reverse gender discrimination, he must satisfy a modified *McDonnell Douglas* test, as the first prong of *McDonnell Douglas* is not applicable in cases brought by male plaintiffs. *See Mills v. Health Care Servs. Corp.*, 171 F.3d 450, 457 (7th Cir. 1999). Instead, Sinkhorn must show "background circumstances" that indicate that the employer discriminates against males, or that there was something "fishy" going on. *Id.*; *see also Phelan v. City of Chicago*, 347 F.3d 679, 684 (7th Cir. 2003). The evidence presented must "support an inference that the defendant is one of those unusual employers who discriminates against the majority . . . ." *Mills*, 171 F.3d at 455 (quotation omitted).

Sinkhorn presents no argument related to this requirement, ignoring the substantial body of caselaw on the subject (including the six cases cited in LaHood's opening memorandum) and instead stating in his Response that LaHood's failure to challenge Sinkhorn's membership in a protected group constitutes an admission to that effect. (*See* R. 35 at 8.) Even though Sinkhorn thus inexplicably fails to conform his argument to more than a decade of binding precedent, the Court will analyze whether he has presented evidence sufficient to withstand a Motion for Summary Judgment under the proper framework.

In *Mills*, the plaintiff presented evidence that hiring and promotion decisions during the time period at issue disproportionately favored women and that women "dominated the supervisory positions in the relevant office." *Id.* at 457. Similarly, in *Hague v. Thompson Distribution Co.*, 436 F.3d 816 (7th Cir. 2006), white plaintiffs were able to satisfy the modified *McDonnell Douglas* test

in a reverse race discrimination case by presenting "evidence that their black boss fired them and replaced three of them with black employees, the fourth plaintiff's job was assumed by a black employee, and the fifth was not replaced." *Id.* at 822. Thus, the plaintiffs had adequately alleged background circumstances by showing that their claims were no different from those involved in "the more typical discrimination case." *Id.*

Conversely, in *Phelan v. City of Chicago*, a reverse race-discrimination plaintiff had not satisfied the modified *McDonnell Douglas* test. *See* 347 F.3d at 685. Phelan failed to provide a "reason to believe his superiors . . . would be inclined to discriminate against white men," as they themselves were white men and Phelan's eventual replacement was also a white male. *Id.* Moreover, he presented no evidence of "fishy circumstances" sufficient to "raise an inference of racial discrimination–or any illegal or improper behavior for that matter." *Id.*

This case is analogous to *Phelan*, and distinguishable from *Mills* and *Hague*. Sinkhorn has provided no reason to believe that the FAA would be inclined to discriminate against males. The record indicates that many of Sinkhorn's co-workers and superiors were male, and that men, not women, were responsible for the conduct about which Sinkhorn complained.[4] Further, instead of showing a pattern of preference for female employees, Sinkhorn alleges only that one female employee received preferential treatment after making an unspecified complaint. Even taking the facts in a light most favorable to Sinkhorn and drawing all reasonable inferences in his favor, as is appropriate in a summary judgment setting, he has failed to show the necessary "background

---

[4] This is not to say that Sinkhorn's claims are insufficient solely because he is a male plaintiff complaining of discrimination by male superiors, because it is clear that same-sex discrimination claims are viable. *See Oncale v. Sundowner Offshore Servs.*, Inc., 523 U.S. 75, 79 (1998). Rather, in the context of this case and of the *Mills* "background circumstances" test, Sinkhorn has failed to present any evidence supporting an inference of discrimination against him, as a member of the majority sex.

circumstances" to establish a *prima facie* case. Therefore, Sinkhorn has not satisfied the first prong of the modified *McDonnell Douglas* test. The Court will nevertheless briefly discuss the other requirements in order to provide a complete analysis.

### 2. Meeting Employer's Legitimate Expectations

LaHood does not contest that Sinkhorn was meeting the FAA's legitimate employment expectations at all times relevant to this litigation. Drawing all reasonable inferences in Sinkhorn's behavior, the Court therefore finds that he has satisfied this requirement of the *prima facie* case.

### 3. Adverse Employment Action

Sinkhorn appears to claim that adverse employment actions were taken against him, because of his gender, when he was treated differently than female employees in the handling of work-environment and benefit-related complaints and when his fellow employees were allowed to create a sexually hostile and offensive work environment. However, "[n]ot everything that makes an employee unhappy is an actionable adverse action." *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996). There are three categories of materially adverse employment action:

> (1) cases in which the employee's compensation, fringe benefits, or other financial terms of employment are diminished, including termination; (2) cases in which a nominally lateral transfer with no change in financial terms significantly reduces the employee's career prospects by preventing her from using her skills and experience, so that the skills are likely to atrophy and her career is likely to be stunted; and (3) cases in which the employee is not moved to a different job or the skill requirements of her present job altered, but the conditions in which she works are changed in a way that subjects her to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in her workplace environment.

*O'Neal v. City of Chicago*, 392 F.3d 909, 911 (7th Cir. 2004). Sinkhorn does not allege any conduct on the FAA's part that would fall within the scope of category (1) or (2), and the FAA's failure to respond to his complaints to his satisfaction does not fall to the level of negative treatment

7

envisioned by category (3). With respect to the allegedly discriminatory conduct of his coworkers, Sinkhorn states that his job efficiency was impaired by the behavior and that his coworkers' actions made it very difficult to work at the FAA, but he does not allege or state facts supporting a claim that the conduct constituted a "significantly negative alteration" in his working environment. Significantly, Sinkhorn has established no facts supporting an inference that his coworkers' behavior was directed at him in particular or designed to alter the terms or conditions of his working relationship with the FAA. *See Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 552 (7th Cir. 2002) ("second hand" comments have a lesser impact than comments directed at the plaintiff). Sinkhorn has therefore failed to establish that his coworkers' conduct constituted a materially adverse employment action. *See Stephens v. Erickson*, 569 F.3d 779, 789 (7th Cir. 2009) (Title VII "does not protect an employee from trivial harms, petty slights, nor minor annoyances").

### *4. Similarly Situated Individuals Treated More Favorably*

Sinkhorn states that Chrystalina Morris, a female employee who complained about her work conditions, had her complaints handled in a more expeditious and satisfactory manner and was moved to another work area. However, Sinkhorn makes no effort to explain how Morris is similarly situated, that is, "directly comparable in all material respects." *Sartor v. Spherion Corp.*, 388 F.3d. 275, 279 (7th Cir. 2004). For example, relevant factors might include that he and Morris reported to the same supervisor, engaged in the same conduct, had the same qualifications, or that there were no "differentiating or mitigating circumstances as would distinguish . . . the employer's treatment of them." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000). Sinkhorn points to no evidence that Morris was a similarly situated employee in any of these respects. Therefore,

8

Sinkhorn has failed to establish that Morris was a similarly situated individual who did not share his protected characteristic and was treated more favorably.

Sinkhorn has therefore failed to show "background circumstances" supporting his claim of reverse gender discrimination. Nor has he shown that his coworkers' conduct constituted a materially adverse employment action or that a similarly situated female employee was treated more favorably than he was. As a result, he has failed to support his claim of gender discrimination under the indirect method of proof, and LaHood's Motion for Summary Judgment is granted as to Count I of Sinkhorn's Second Amended Complaint.

## II. Retaliation Under Title VII[5]

Title VII prohibits an employer from discriminating against an employee for opposing an unlawful employment practice. *See* 42 U.S.C. § 2000e-3(a). As with a gender discrimination claim, an employee may present either direct or indirect evidence of unlawful retaliation. *See Mannie v. Potter*, 394 F.3d 977, 983 (7th Cir. 2005).

### A. Title VII Retaliation - Direct Method

To proceed under the direct method, Sinkhorn "must offer evidence that he engaged in a statutorily protected activity, that the defendants subjected him to an adverse employment action and that a causal connection exists between the two events." *Treadwell v. Office of Ill. Sec'y of State*, 455 F.3d 778, 781 (7th Cir. 2006).

#### *1. Protected Activity*

---

[5] In Sinkhorn's Second Amended Complaint, retaliation and hostile work environment are alleged as separate claims, while Sinkhorn's Response brief combines these claims, arguing that he suffered from a retaliatory hostile work environment. (*See* R. 35 at 11-15.) The Court will address Sinkhorn's retaliation and hostile work environment claims separately, in keeping with the allegations of the Second Amended Complaint.

9

The parties agree that in February of 2007, Sinkhorn engaged in a statutorily protected activity by filing a formal complaint with the EEOC. Sinkhorn's Response to LaHood's Motion implies that he believes his various 2006 complaints to FAA authorities also constituted protected activities, but he does not develop any argument in support of the proposition that his informal complaints should qualify as such. (*See* R. 35 at 13-15.) As noted above, the only evidence that Sinkhorn presents supporting that such complaints were even made is his own self-serving affidavit and a series of unauthenticated letters containing statements that are hearsay at best. Moreover, Sinkhorn stated in his deposition that none of the letters comprising the previous internal complaints stated a belief that he "was being discriminated against because of protected EEO activity or along those lines" but only that "it was implied when I said that these things were happening, that they should not be happening to me." (*See* R. 31, Ex. 2, Deposition Testimony of Scott Sinkhorn, at 82.) (hereinafter "Sinkhorn Dep.") Because Sinkhorn's earlier complaints, by his own admission, did not "indicat[e] a connection to a protected class or provid[e] facts sufficient to create that inference," they are not protected activity under Title VII and could not form the basis for a retaliation claim even if they constituted proper evidence before the Court. *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006). The Court will therefore consider Sinkhorn's retaliation claim only with reference to events that occurred after the filing of his EEOC complaint in February of 2007.

### 2. *Adverse Employment Action*

In order to satisfy the second step of the retaliation test, the adverse action requirement, Sinkhorn must show that the FAA took a materially adverse action that produced an injury or harm

which would have dissuaded a reasonable worker from making or supporting a charge of discrimination. *See Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1119 (7th Cir. 2009) (citing *Burlington N. & Santa Fe R.R. Co. v. White*, 548 U.S. 53, 67 (2006)).

Focusing only on the alleged acts of retaliation that occurred after Sinkhorn's EEOC complaint, Sinkhorn alleges that he was denied alternative work assignments when he was medically disqualified due to his diagnosis with Non-Hodgkins Lymphoma, and that this denial constituted a retaliatory adverse employment action. In order to establish that a change in the terms and conditions of employment constituted an adverse employment action, the plaintiff must show more "than a mere inconvenience or an alteration of job responsibilities." *Crady v. Liberty Nat'l Bank & Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir. 1993).

The record indicates that Sinkhorn was medically disqualified from his usual work for one hundred days, and that he was provided with alternative duties for seventy-one of those days. However, Sinkhorn acknowledged during his deposition that the assignment of alternative duties is discretionary. (*See* Sinkhorn Dep. at 75.) He has not shown that additional duties were available during his period of medical disqualification but that he was denied the opportunity to perform them. Further, he has not shown that a discretionary decision on the FAA's part to allow him to perform additional duties for approximately 70% of his medical disqualification period constituted a "materially adverse employment action" analogous to a decrease in salary, a material loss of benefits, or a significant decrease in material responsibilities. *See Crady*, 993 F.2d at 136. Therefore, Sinkhorn has failed to show that the denial of alternative work assignments constituted a retaliatory adverse employment action.

Sinkhorn also alleges that he was discriminated against when he was denied twenty hours of advanced sick leave. The record indicates that Sinkhorn's contract allows up to 240 hours of advanced sick leave when an employee has used all of his or her sick leave. Sinkhorn used 220 of the 240 hours. There is no admissible evidence in the record explaining why the remaining 20 hours were not used; instead, Sinkhorn's self-serving affidavit, which does not serve to establish a material issue of fact for the reasons described above, only states baldly that he was "only allowed by the FAA to take 220 of those hours." Even if it were undisputed that the FAA had affirmatively denied Sinkhorn use of the remaining twenty hours, Sinkhorn could not show a materially adverse employment action by arguing that he was only allowed to use slightly more than 90% of the unearned sick leave awarded to him.

### 3. *Causal Connection*

Moreover, Sinkhorn has not established a causal link between the activity and the alleged retaliation, which he must do by showing that his "protected conduct was a substantial or motivating factor in the employer's decision." *Culver v. Gorman & Co.*, 416 F.3d. 540, 545 (7th Cir. 2005). Here, Sinkhorn has established no facts establishing a causal connection with respect to either of the allegedly retaliatory actions. The record indicates that Sinkhorn was not aware of the identity of the individual who made key decisions related to his alternative work assignments or his allotment of sick leave. (*See* Sinkhorn Dep. at 71, 77.) Further, a causal link between protected activity and an allegedly retaliatory action cannot be forged where there is no evidence that the person taking the action knew of the activity. *See Luckie v. Ameritech Corp.*, 389 F.3d 708, 715 (7th Cir. 2004). Sinkhorn has not presented any evidence supporting a reasonable inference that some unknown decision-maker was aware of his EEOC activity and retaliated against him because of it.

Sinkhorn has thus failed to establish any facts supporting his claim that a material adverse employment action was taken against him in retaliation for his Title-VII protected activity, and therefore he has failed to show, under the direct method of proof, that he was a victim of retaliation.

**B. Title VII Retaliation - Indirect Method**

To proceed under the indirect method, Sinkhorn must show that after opposing the alleged discrimination, he was subjected to an adverse employment action even though his job performance was satisfactory. *See Mannie*, 394 F.3d at 984. In other words, he must show that he was treated less favorably than a similarly situated employee who did not complain of discrimination. *Argyropoulos v. City of Alton*, 539 F.3d 724, 733 (7th Cir. 2008).

Here, Sinkhorn has not established that a similarly situated non-complaining employee was treated more favorably. As discussed above, Sinkhorn points to Chrystalina Morris as a possible, although insufficient, comparable employee for his sex discrimination claim. He points to no individual whom he asserts to have been similarly situated except that the other employee did not complain of discrimination, and thus cannot sustain a claim of unlawful retaliation under the indirect method of proof.

Because Sinkhorn has failed to establish facts supporting his claim of unlawful retaliation under either the direct or indirect methods of proof, LaHood's Motion for Summary Judgment is granted as to Count III of Sinkhorn's Second Amended Complaint.

**III. Hostile Work Environment Claim**

Sinkhorn alleges that his coworkers created a hostile work environment in retaliation for his Title VII-protected activity by making racially and sexually disparaging remarks, engaging in excessive flatulence, and using profanity and inappropriate language. An objectively hostile work environment is one that a reasonable person would find hostile or abusive. *See Harris v. Forklift Systems Inc.*, 510 U.S. 17, 21 (1993).

In order to establish a hostile work environment, Sinkhorn must show the harassment to be both subjectively and objectively so severe or persuasive as to alter the conditions of employment and create an abusive working environment. *See id*. In determining whether he has met this standard, the Court must consider all of the relevant circumstances, including "the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating; or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id*. at 23. The harassment must be "both subjectively and objectively so severe or persuasive as to alter the conditions of employment and create an abusive working environment." *Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 645 (7th Cir. 2005).

Sinkhorn has established no facts demonstrating that the incidents about which he complains were objectively hostile to the point where they altered the conditions of his employment. The record indicates that the offensive conduct was not directed at Sinkhorn personally, but only conducted in his presence. Keeping in mind that Title VII is not "a general civility code for the American workplace," *Oncale*, 523 U.S. at 80, none of the incidents alleged here are sufficiently hostile or abusive to support a Title VII claim. However inappropriate or offensive he may have found his coworkers' conduct, Sinkhorn is simply not entitled to make a federal case from flatulence

and profanity alone. *See Baskerville v. Culligan Intern. Co.*, 50 F.3d 428, 430 (7th Cir. 1995) ("the occasional vulgar banter . . . of coarse or boorish workers" does not violate Title VII).

Moreover, even if the conduct at issue were sufficient to create a hostile work environment, Sinkhorn offers no evidence to support a claim that the hostility was also retaliatory. Nothing in the record links the actions of Sinkhorn's coworkers to his protected activity, and Sinkhorn has offered no evidence to support his speculation that their conduct was motivated by his protected activity. Indeed, many of the behaviors about which he complains began long before Sinkhorn filed any formal complaint with the EEOC.

As Sinkhorn has failed to establish evidence sufficient to support his claim that he was subjected to hostile work environment in retaliation for his protected activity. LaHood's Motion for Summary Judgment is therefore granted as to Count IV of Sinkhorn's Second Amended Complaint.

## CONCLUSION AND ORDER

Sinkhorn, proceeding under the indirect method of proof, has failed to establish facts sufficient to support his claim of reverse gender discrimination in violation of Title VII. Most significantly, he fails to present any facts or argument related to the modified McDonnell Douglas test applicable to reverse discrimination cases. Sinkhorn's retaliation claim is insufficiently supported by facts in the record, because he has shown neither that he suffered a qualifying adverse employment action subsequent to his protected activity nor the existence of any causal link between employment action and EEOC activity. Finally, Sinkhorn has failed to establish facts to support his claim that a hostile work environment was created in retaliation for his protected activity, because the conduct about which he complains was not so severe or hostile as to alter the terms and conditions of his employment.

LaHood's Motion for Summary Judgment is granted in its entirety.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: March 17, 2010